2015 OK CIV APP 32

**GJA, individually, and as Parent and next friend of John Doe and Jane Doe, minor children, and KA, an Individual, Plaintiffs/Appellants,**

**v.**

**OKLAHOMA DEPARTMENT OF HUMAN SERVICES; John Does 1–30, unknown individuals employed by Oklahoma Department of Human Services, Defendants/Appellees.**

**No. 112,885.**

Court of Civil Appeals of Oklahoma, Division No. 4.

March 3, 2015.

---

J. Christopher Davis, Jon D. Cartledge, Johnson & Jones, P.C., Tulsa, Oklahoma, and E. Anthony Mareshie, E. Anthony Mareshie, PLLC, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Richard W. Freeman, Jr., Joseph W. Strealy, Assistant General Counsel, Department of Human Services, Oklahoma City, Oklahoma, for Defendant/Appellee Oklahoma Department of Human Services.

KEITH RAPP, Presiding Judge.

¶1 Plaintiffs, GJA (Father), individually, and as parent and next friend of John Doe (Son) and Jane Doe (Daughter), minor children and KA (Step Mother), individually, appeal an Order sustaining the motion to dismiss filed by Defendant, Oklahoma Department of Human Services (DHS).[1] This appeal proceeds under the accelerated appeal procedures of Okla. Sup.Ct. Rule 1.36, 12 O.S.2011, Ch. 15, app. 2.

## BACKGROUND

¶2 Plaintiffs alleged that Daughter and Son were abused while in their mother's (Father's former spouse) custody. The allegations are that Daughter was sexually abused and Son was abused by withholding needed medical treatment. According to the petition, DHS was informed about the abuse of both children and the agency and its employees did nothing. Moreover, Plaintiffs alleged that DHS and its employees did not report the sexual abuse as required by law.

¶3 After complying with the preliminary claim and notice provisions of the Governmental Tort Claims Act (GTCA), Plaintiffs sued. Plaintiffs asserted a claim for damages based upon tort claims of negligence,

negligence *per se* and intentional infliction of emotional distress. They alleged a violation of their constitutional rights. Plaintiffs also alleged a civil conspiracy.

¶4 DHS moved to dismiss for failure to state a claim. 12 O.S.2011, § 2012(B)(6). DHS argued that it was immune from tort claims and that *Bosh v. Cherokee County Bldg. Auth.*, 2013 OK 9, 305 P.3d 994, did not create an actionable claim under the facts of this case. DHS also argued that the petition did not state a claim for civil conspiracy.[2]

¶5 The trial court sustained the motion to dismiss. The trial court ruled that DHS was immune under the GTCA from tort liability. Next, the trial court ruled that the alleged violations of constitutional rights were not actionable under *Bosh*. Last, the trial court ruled that the petition did not state a claim for civil conspiracy.

¶6 Plaintiffs' response to the motion to dismiss included a request to stay the proceedings to allow discovery and pertinent amendments to the petition. The journal entry does not directly rule on this request, but necessarily denied it. Plaintiffs add, as trial court error, a failure to allow discovery before ruling on the motion.

¶7 Plaintiffs appeal.

## STANDARD OF REVIEW

¶8 A trial court's dismissal for failure to state a claim upon which relief can be granted involves a *de novo* review to ascertain whether the petition, including its exhibits, is legally sufficient. *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶7, 176 P.3d 1204, *Indiana Nat'l Bank v. State Dep't of Human Services*, 1994 OK 98, ¶2, 880 P.2d 371, 375.

¶9 A pleading must not be dismissed for failure to state a claim unless the

1. The caption of the petition in the trial court lists "John Does 1–30, unknown individuals employed by Oklahoma Department of Human Services." The appealed Order does not dispose of any claim against the John Doe Defendants, or any persons actually named as employees in the petition. However, the District Court docket sheet in the Appellate Record does not reflect that summons was issued and served as to any Defendant other than DHS. Only the liability of the State is at issue on appeal because Plaintiffs did not name or serve any individuals prior to the dismissal Order. *Tanique, Inc. v. State ex rel. Oklahoma Bureau of Narcotics and Dangerous*

*Drugs*, 2004 OK CIV APP 73, ¶10, 99 P.3d 1209, 1213; *see High v. Southwestern Insurance Company*, 1974 OK 35, 520 P.2d 662 (construing now repealed 12 O.S.1971, § 320 to require service of summons). Therefore, this Court finds that the Order of dismissal is a final, appealable order.

2. The list of Issues Presented attached as Exhibit "C" to the petition-in-error does not list error by a dismissal of the civil conspiracy claim. Therefore, the ruling as to the civil conspiracy claim is not before this Court.

allegations show beyond any doubt that the litigant can prove no set of facts which would entitle him to relief. *Indiana Nat'l Bank*, 1994 OK 98 at ¶ 3, 880 P.2d at 375. The trial court's task is to inquire whether relief is possible under any set of facts that could be established consistent with the allegations. Generally, a motion to dismiss may be sustained for two reasons: (1) lack of any cognizable legal theory, or, (2) insufficient facts under a cognizable legal theory. *Indiana Nat'l Bank*, 1994 OK 98 at ¶ 4, 880 P.2d at 375–76.

¶ 10 The appellate court will exercise its "plenary, independent, and non-deferential authority [when] reexamin[ing] a trial court's legal rulings." *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, ¶ 4, 932 P.2d 1100, 1103 n. 1; *Spielmann v. Hayes*, 2000 OK CIV APP 44, ¶ 8, 3 P.3d 711, 713. This Court's standard of review is *de novo* and gives no deference to the legal rulings of the trial court. *State ex rel. Dep't of Human Services ex rel. Jones v. Baggett*, 1999 OK 68, 990 P.2d 235.

## ANALYSIS AND REVIEW

### A. Sovereign Immunity

¶ 11 DHS asserted sovereign immunity for all tort claims alleged by Plaintiffs.[3] The

GTCA specifies the extent to which sovereign immunity has been waived. 51 O.S.2011, § 153(A) and (B).[4] In *Smith v. City of Stillwater*, 2014 OK 42, ¶ 14, 328 P.3d 1192, 1198, the Court held:

The GTCA is the exclusive remedy by which an injured plaintiff may recover against a governmental entity for its negligence. The GTCA adopts the doctrine of sovereign immunity and provides that the State, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts. The GTCA waives the immunity of the State and its political subdivisions, but only to the extent and in the manner provided in the act. Title 51 O.S. § 153 extends governmental accountability to all torts for which a private person or entity would be liable, subject only to the act's specific limitations and exceptions. (Citations omitted.)

¶ 12 DHS relies upon two of the statute's exceptions: 51 O.S.2011, § 155(4) and (29).[5]

### 1. Section 155(4)

¶ 13 DHS condensed and summarized Plaintiffs' allegations. DHS described the

---

**3.** These are Plaintiffs' Causes of Action: (1) First and Third, negligence and negligence *per se*; (2) Fourth, intentional infliction of emotional distress; and, (3) Sixth, loss of consortium. There is no serious dispute about the fact that the Sixth cause of action is actually an item of damages and not a separate cause of action.

Plaintiffs listed six "causes of action" with the charging facts the same. Plaintiffs have one cause of action with five theories of recovery and one request for an item of damages. *Bryson v. Oklahoma County*, 2011 OK CIV APP 98, 261 P.3d 627, n. 1 (citing *Resolution Trust Corp. v. Greer*, 1995 OK 126, 911 P.2d 257).

**4.** Section 153(A) and (B) provide:

A. The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an em-

ployee acting outside the scope of the employee's employment.

B. The liability of the state or political subdivision under The Governmental Tort Claims Act shall be exclusive and shall constitute the extent of tort liability of the state, a political subdivision or employee arising from common law, statute, the Oklahoma Constitution, or otherwise. If a court of competent jurisdiction finds tort liability on the part of the state or a political subdivision of the state based on a provision of the Oklahoma Constitution or state law other than The Governmental Tort Claims Act, the limits of liability provided for in The Governmental Tort Claims Act shall apply.

**5.** This provision reads:

The state or a political subdivision shall not be liable if a loss or claim results from:
. . . .
4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
. . . .

petition as charging that DHS was guilty of negligence and negligence *per se* "in breaching its common law and statutory duties to protect (Child Plaintiffs) from sexual assault or abuse, physical abuse, emotional abuse and other abuses."

¶ 14 Plaintiffs alleged that DHS, by its employees, knew or should have known of the abuse of both children occurring or beginning in March and July of 2011. Plaintiffs claimed that DHS was informed about the abuse of Son and took no action. Plaintiffs further alleged that DHS was informed of the sexual abuse of Daughter, stopped its investigation, and took no action, including not reporting the sexual abuse claim to the police.[6]

¶ 15 By statute, DHS is directed to respond to reports of child abuse and conduct an investigation. 10A O.S.2011, § 1–2–105 (amended effective November 1, 2014). This statute describes the duties and authority of DHS in conducting its investigation and requires a written report to the District Attorney.

¶ 16 DHS cited *Skurnack v. State ex rel. Dep't of Human Services,* 2002 OK CIV APP 37, 46 P.3d 198. In *Skurnack,* the Court held that DHS was immune under the previously numbered child abuse investigation statute. The facts of that case are that DHS tried to investigate, but the investigation was thwarted by the parents. DHS had to resort to intervention in court by the District Attorney. Thus, the Court observed that the record was clear that DHS was "attempting to enforce" the statute requiring it to investigate or assess the referral of neglect. Consequently, the immunity based upon "enforcement" of law shielded DHS from the liability claimed by *Skurnack.*

¶ 17 Here, the allegations are different than the facts in *Skurnack,* where the "enforcement" exemption for immunity applied. The Plaintiffs alleged that DHS did nothing

regarding the abuse report involving Son and virtually did nothing regarding the abuse report involving Daughter.[7] In other words, Plaintiffs alleged that DHS failed to enforce the law.

¶ 18 Section 155(4) provides for immunity for "[a]doption or enforcement of *or failure to adopt or enforce a law,* whether valid or invalid, *including, but not limited to, any statute,* charter provision, ordinance, resolution, rule, regulation or written policy." (Emphasis added.) Viewed in the best light possible, Plaintiffs alleged that DHS failed to enforce the law. DHS is thus immune from liability. *See, Felkins v. Oklahoma Firefighters Pension and Ret. Sys.,* 2005 OK CIV APP 39, ¶ 13, 116 P.3d 195, 198 (retirement system trustees immune based on alleged failure to enforce law); and, *Bordwine v. Oklahoma Firefighters Pension and Ret. Sys.,* 2004 OK CIV APP 75, ¶ 11, 99 P.3d 703, 706–07 (failure to credit military service as required by law).

¶ 19 Therefore, the trial court correctly ruled that the tort claims of negligence, negligence *per se* and intentional infliction of emotional distress must be dismissed because DHS has immunity under Section 155(4). The damage claim for loss of consortium was also correctly dismissed, because it is an item of damages for the dismissed torts

### 2. Section 155(29)

¶ 20 DHS merely stated that Section 155(29) affords immunity. Section 155(29) pertains to acts or omissions of an employee in the placement of children. Here, according to the allegations, both children were living with their mother at the time and in accordance with the Decree of Divorce. Thus, the children were not "placed" by DHS employees. The Legislature could have, but did not, include "removal of children" in this subdivision of the statute.

---

29. Any claim based upon an act or omission of an employee in the placement of children.

6. Plaintiffs' allegations of fact are taken as true *only* for the purpose of determining whether an actionable claim has been alleged. *Indiana Nat'l Bank,* 1994 OK 98 at ¶ 3, 880 P.2d at 375.

7. The allegation regarding what transpired regarding the report of Daughter's abuse may also be considered as a complaint about enforcement of the law. Thus, *Skurnack* provides persuasive authority that DHS is immune regarding the allegations relating to Daughter's abuse.

¶ 21 Moreover, a reasonable reading of the petition does not disclose any claim based upon an act or omission in the placement of the children. Section 155(29) does not apply.

## B. Constitutional Claim

■ ¶ 22 Plaintiffs alleged that the actions and inactions of DHS employees, with respect to the abuse claims, violated their constitutional rights to Due Process of Law as guaranteed by the Oklahoma Constitution. Plaintiffs further alleged that discovery might reveal additional violations of constitutional rights, but none were specifically identified. Plaintiffs asserted that they have a cause of action under the holding of *Bosh v. Cherokee County Bldg. Auth.*, 2013 OK 9, 305 P.3d 994.

¶ 23 The *Bosh* Court *held:* (1) that section 30, article 2 of the Oklahoma Constitution provides a private cause of action for excessive force against an arrested and detained person, notwithstanding the immunities under the GTCA; (2) *respondeat superior* applied; and (3) the action is recognized retrospectively.[8] The facts were that Bosh was in custody and while being booked, the jailers severely beat and injured him and denied him medical attention for two days. His injures were severe and required surgery.

¶ 24 The *Bosh* Court *reasoned:*

The OGTCA cannot be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens. To do so would not only fail to conform to established precedent which refused to construe the OGT-CA as providing blanket immunity, but would also render the Constitutional protections afforded the citizens of this State as ineffective, and a nullity. Therefore we answer the reformulated question and hold that the Okla. Const. art 2, § 30 provides a private cause of action for excessive force, notwithstanding the requirements and limitations of the OGTCA.

*Bosh*, 2013 OK 9 at ¶ 23, 305 P.3d at 1001.

¶ 25 The case before this Court now presents two lines of inquiry.

¶ 26 First: Should the *Bosh* case be limited to its facts and specific holdings or does the decision stand for the proposition that the Supreme Court recognizes a broader scope of actionable claims based upon violations of constitutional rights? Second: If the latter interpretation be followed, does that mean that Plaintiffs here have stated a claim?[9]

¶ 27 The concept of precedent at least stands for the proposition that under certain facts, a particular party should prevail on the relevant source of law. Thus, the facts in *Bosh* involve an arrested person who is detained in jail and subjected to excessive force and inhumane conditions of confinement, all of which invoke Article 2, section 30 of the Oklahoma Constitution. Another person, similarly treated, can invoke *Bosh* as authority for that person's lawsuit.[10]

¶ 28 Clearly, Plaintiffs' allegations do not involve the same or similar circumstances. In a strict sense, the *Bosh* precedent, when thusly limited, does not provide authority for Plaintiffs to state a claim.[11]

---

8. This provision of the Oklahoma Constitution reads:

   The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized.

9. Another way to state the problem is: What is the scope of the precedent set by *Bosh*? *See* Shawn J. Bayern, *Case Interpretation*, 36 Fla. St. Univ. L.R. 125 (2009), for interpretation background and one approach to determining the meaning of cases.

10. In *Bryson v. Oklahoma County*, 2011 OK CIV APP 98, 261 P.3d 627, the Court recognized that the GTCA did not provide immunity for a prisoner's claim that a detention officer using excessive force violated his constitutional rights under Okla. Const., Art. 2, § 30 and the Fourth Amendment to the United States Constitution.

11. *See Jackson v. Oklahoma City Pub. Sch.*, 2014 OK CIV APP 61, 333 P.3d 975, finding *Bosh* inapplicable to a claim that a teacher committed an assault and a battery on a student because the student was neither arrested nor detained.

¶ 29 However, such limitation fails to account for the Court's reasoning. Of course, the Supreme Court has had the occasion to deem its prior statements as "broader than the facts warrant." *Stone v. Bonaparte*, 1930 OK 563, ¶ 22, 148 Okla. 70, 297 P. 228, 232. On the other hand, the Court has recognized that "precedents must often yield to the force of reason and to paramount demands of justice as well as the decencies of civilized society, and the law ought to speak with a voice responsive to these demands." *Oklahoma County v. Queen City Lodge No. 197, I.O.O.F.*, 1945 OK 55, ¶ 20, 195 Okla. 131, 156 P.2d 340, 344–45.

¶ 30 A more in depth examination of *Bosh* is warranted in order to ascertain what rule, standard, or principle the case was meant to stand for. In that regard, the Supreme Court expressed its reasoning as set out above. In addition, the Supreme Court reviewed authorities leading up to its decision and placed its decision in historical perspective. Thus, the Opinion provides the textual material that enables the reader of that Opinion to understand the Court's intent. The result of such an examination discloses that the Court has not only adjudicated a specific claim based upon a set of facts, but also the Court made a statement of policy (upholding constitutional guarantees and protections) as its broader holding. The Court then specifically applied that broader policy statement holding to the facts of the case.

¶ 31 Therefore, in this Court's opinion, *Bosh* stands for the proposition that the protections and guarantees afforded the citizens by the Constitutions of the State of Oklahoma and of the United States represent the highest values of the people. Violations of these rights and guarantees cannot be shielded under the guise or cloak of immunity.

¶ 32 The first inquiry is answered. The *Bosh* case is not limited to its facts and specific holding. It does stand for the proposition that the Supreme Court recognizes a broader scope of actionable claims based upon violations of constitutional rights.

¶ 33 The question remains, however, of whether Plaintiffs have stated such a claim. Plaintiffs allege that the children's rights to Due Process of Law were violated. Not every malfeasance, misfeasance, or nonfeasance rises to the level of a violation of constitutional rights.[12] This Court observes that, in cases like *Bosh* and cases involving convicted, incarcerated inmates, where a claim has been found, the facts reveal an egregious and extreme set of circumstances showing that the individual defendant(s) intentionally inflicted physical harm on the plaintiff.[13]

¶ 34 In cases such as here under review, the trial court has a role as gatekeeper to determine whether a petitioner made a claim as a matter of law. In *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 2372–73, 129 L.Ed.2d 383 (1994), the Court explained that the district court must make certain preliminary determinations before a claim for damages for a constitutional violation could proceed. Additional examples of a trial court's gatekeeper role include: *Courtney v. State*, 2013 OK 64, ¶ 8, 307 P.3d 337, 341 (petition to determine innocence); *Worsham v. Nix*, 2006 OK 77, 145 P.3d 1055 (gatekeeper of the evidentiary process); *Miller v. Miller*, 1998 OK 24, ¶ 34, 956 P.2d 887, 901 (determination whether conduct may reasonably be regarded as sufficiently extreme and outrageous).

¶ 35 Application of a court's gatekeeper role further serves to focus the *Bosh* claims upon those acts or inactions which rise to the level of a constitutional claim. This means that *Bosh* does not create a wide-ranging tort claim. Moreover, the gatekeeper role will resolve cases such as *Jackson v. Oklahoma*

---

12. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (not every injury suffered by a prisoner translates into a constitutional rights violation); *Estelle v. Gamble*, 429 U.S. 97, 104, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (physician negligence or malpractice regarding inmates alone does not amount to a violation of constitutional rights).

13. This Court finds no legal significance from the fact that many of these cases involve search and seizure or cruel and unusual punishment as opposed to other constitutional rights. The *Bosh* Court did not limit protection to specific constitutional rights and guarantees.

*City Pub. Sch.* without having to limit the interpretation of *Bosh.*[14] Thus, the facts as recited in *Jackson* may easily be judged as facts that do not give rise to a constitutional claim.

¶ 36 Here, this Court must consider whether the allegations sufficiently state a claim of violation of constitutional rights. It does not appear that the trial court did so opting instead to limit *Bosh* to its facts. Nevertheless, if the trial court reached the correct judgment, although for incorrect reasons, the judgment will not be reversed. *Thompson v. Inman,* 1971 OK 32, ¶ 30, 482 P.2d 927, 937.

¶ 37 According to the petition, the children were not in the custody of DHS so as to implicate their clearly established constitutional right to be reasonably safe from harm when placed in the state's custody.[15] The employees of DHS were not the persons inflicting the alleged physical and emotional harm on the children. The substance of the petition is that: (1) DHS and its employees had a duty imposed by law to investigate child abuse reports; (2) DHS and its employees breached that duty by either failing to investigate or negligently investigating the child abuse reports; and, (3) as a direct result of the breaches of duty the children sustained injury for which they are entitled to damages.

¶ 38 After examination using the "gate keeper" role, this Court concludes that Plaintiffs' petition does not contain allegations of facts giving rise to violations of constitutional rights to Due Process of Law. At most, the allegations are claims of gross negligence in carrying out the investigations; so Plaintiffs have not brought their claims into the *Bosh* cause of action for violation of constitutional rights. Therefore, the trial court did not err in dismissing the petition.

## C. Additional Discovery

¶ 39 In their response to the motion to dismiss, Plaintiffs requested that the ruling be stayed for additional discovery and corresponding amendment to the petition. This is the equivalent of a request for additional time to respond. Plaintiffs' request did not identify any areas for discovery or provide authority for the request. The Record shows that neither party had initiated any discovery.[16]

¶ 40 The Oklahoma Pleading Code gives the court discretion to permit enlargement of time to respond for good cause. 12 O.S.2011, § 2006; *Davis v. Martin Marietta Materials, Inc.,* 2010 OK 78, ¶ 1(3), 246 P.3d 454, 455. However, the statute directs that the motion for extension of time be filed before the expiration of the original deadline. 12 O.S.2011, § 2006(B)(1)[17]; *Powers v. District Court of Tulsa County,* 2009 OK 91, ¶ 4, 227 P.3d 1060, 1066; *Humphries v. Lewis,* 2003 OK 12, ¶ 6, 67 P.3d 333, 335 (emphasizing "before"); *see Langford v. Anderson,* 1989 OK CIV APP 47, ¶ 5, 778 P.2d 937, 938 (noting that a party did not have an absolute right to discovery before a ruling on a motion to dismiss).

¶ 41 Here, Plaintiffs did not file prior to the deadline or offer a good cause basis to grant an extension of time. Hence, the Record does not reveal any basis to find that the trial court abused its discretion.

14. *See* n. 11.

15. *Yvonne L., By and Through Lewis v. New Mexico Dep't of Human Services,* 959 F.2d 883 (10th Cir.1992) (minors in state custody have constitutional right to safety).

16. This Court notes that the DHS' motion is not a motion for summary judgment nor a motion to dismiss treated as a summary judgment. Thus, the provision for additional discovery in summary judgment proceedings does not apply here. 12 O.S.2011, § 2056(F); Rule 13(d), Rules for Districts Courts, 12 O.S.2011, Ch. 2, app. Moreover, Plaintiffs did not comply with the requirements of Section 2056(F) and Rule 13(d). In an unreported decision, the Court ruled that the federal equivalent Rule does not apply to motions to dismiss. *Xie v. University of Utah,* 243 Fed. Appx. 367 (10th Cir.2007).

17. Section 2006(B)(1) provides:

B. ENLARGEMENT. When by this title or by a notice given thereunder by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion:
1. With or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order.

¶ 42 The petition-in-error states only that the trial court committed error as a matter of law without permitting discovery. As shown here, there is no absolute right to an extension of time. Therefore, in addition, the petition-in-error does not set out a ground for reversal.

¶ 43 The trial court did not err by ruling on the motion to dismiss without granting additional time to Plaintiffs for discovery.

### CONCLUSION

¶ 44 Section 155(4) of the GTCA provides for immunity for "[A]doption or enforcement of *or failure* to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Viewed in the best light possible, Plaintiffs alleged that DHS failed to enforce the law. DHS is thus immune from liability. The trial court correctly ruled that the tort claims of negligence, negligence *per se*, and intentional infliction of emotional distress must be dismissed because DHS has immunity under Section 155(4). The damage claim for loss of consortium was also correctly dismissed because it is an item of damages for the torts. Section 155(29) of the GTCA does not apply to this case.

¶ 45 Plaintiffs' claim that they have a cause of action under the holding of *Bosh v. Cherokee County Bldg. Auth.*, 2013 OK 9, 305 P.3d 994, is denied. This Court interprets *Bosh* as providing a cause of action in order to protect against violations of constitutional rights and guarantees in general rather than being limited to the specific constitutional right involved in the case. Nevertheless, not every misfeasance, malfeasance and nonfeasance amounts to a violation of constitutional rights. In its role as gatekeeper, the trial court determines whether the alleged conduct might reasonably be determined to be of the character of a violation of constitutional rights. Here, the alleged action and inaction on the part of DHS might constitute gross negligence, but they do not rise to the level of a violation of constitutional rights. Therefore, the trial court reached the correct result by dismissing the *Bosh* claim.

¶ 46 The trial court did not err by ruling on the motion to dismiss without granting additional time for discovery.

¶ 47 The judgment of the trial court dismissing the Plaintiffs' petition is affirmed.

¶ 48 **AFFIRMED.**

BARNES, J., and THORNBRUGH, J., concur.