2002 OK CIV APP 37

Dennis R. SKURNACK; Sabine Skurnack; Sarah Bates, a minor, by Sabine Skurnack, her Parent and Next Friend; Sandra Bates, a minor, by Sabine Skurnack, her Parent and Next Friend; Michael Skurnack, a minor, by Sabine Skurnack, his Parent and Next Friend; and Alexis Skurnack, a minor, by Sabine Skurnack, her Parent and Next Friend, Plaintiffs/Appellants,

v.

STATE of Oklahoma ex rel. DEPARTMENT OF HUMAN SERVICES, Defendant/Appellee.

No. 96,621.

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 12, 2002.

Larry Puckett, Larry Puckett Law Office, Oklahoma City, OK, for Plaintiffs/Appellants.

Kathryn Boyle Brewer, Assistant General Counsel, Department of Human Services, Oklahoma City, OK, for Defendant/Appellee.

Opinion by JOE C. TAYLOR, Presiding Judge:

¶1 Plaintiffs, Dennis R. Skurnack (Father), Sabine Skurnack (Mother),[1] and their children, appeal an order of the district court dismissing their action for personal injuries. The issue on appeal is whether Defendant, State of Oklahoma ex rel. Department of Human Services (DHS), is entitled to immunity under 51 O.S. Supp.2000 § 155(4). We answer in the affirmative and affirm the dismissal.

¶2 Parents filed this action on behalf of themselves and their children, asserting that DHS negligently removed Parents' children from their home and retained custody of the children pending deprived status proceedings. DHS moved to dismiss the petition,

1. We refer to Mother and Father, collectively, as "Parents."

arguing that the agency is immune from liability, under 51 O.S. Supp.2000 § 155(4), because it was enforcing a law when it investigated a report of neglect against Parents and removed the children from Parents' home.[2] The trial court granted DHS's motion to dismiss, and Plaintiffs appeal.

¶ 3 In responding to DHS's motion, Plaintiffs presented "matters outside the pleadings," including affidavits and an order from the deprived status proceedings. Thus, we must treat DHS's motion to dismiss as one for summary judgment. 12 O.S. Supp. 2000 § 2012(B). Our standard of review on an appeal from a summary judgment is clear. Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: whether one party is entitled to judgment as a matter of law because there are no material disputed facts. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Therefore, our standard of review on appeal is *de novo*. *Id.*; *see also Copeland v. The Lodge Enter., Inc.*, 2000 OK 36, ¶ 8, 4 P.3d 695, 699. "Like a trial court, an appellate court examines the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact and, as in the trial court, all inferences and conclusions arising from the evidentiary materials are viewed in a light most favorable to the non-moving party." *Cranford v. Bartlett*, 2001 OK 47, ¶ 2, 25 P.3d 918, 920 (citation omitted).

¶ 4 Under the Governmental Tort Claims Act (GTCA), 51 O.S.1991 Supp.2000 § 151 through 200, the State of Oklahoma adopted the doctrine of sovereign immunity for the state, its political subdivisions, and all of their employees acting within the scope of their employment. 51 O.S.1991 § 152.1(A). At the same time, the state waived its immunity "to the extent and in the manner provided in [the GTCA]." 51 O.S.1991 § 152.1(B). Under this waiver of immunity, the state and its political subdivisions "shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their

employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state." 51 O.S.1991 § 153(A). The liability of the state or its political subdivisions under the GTCA is "exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise." 51 O.S.1991 § 153(B).

¶ 5 The GTCA, in 51 O.S. Supp.2000 § 155, lists 32 "carefully circumscribed" instances in which the state and its political subdivisions shall not be liable. *Anderson v. Eichner*, 1994 OK 136, ¶ 13, 890 P.2d 1329, 1338. DHS relies on the fourth of these exemptions, which provides that the state or its political subdivisions "shall not be liable if a loss or claim results from .... enforcement of ... a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." 51 O.S. Supp.2000 § 155(4). DHS argues that it is entitled to immunity under § 155(4) because it was "fulfilling its statutory obligation under the Oklahoma Children's Code and the Child Abuse Reporting and Prevention Act, 10 O.S. § 7001–1.1 et seq. and 10 O.S. § 7101, et seq." We agree.

¶ 6 When DHS receives a child abuse or neglect report, it "*shall* promptly respond to the report by initiating an investigation of the report or an assessment of the family." 10 O.S. Supp.2000 § 7106(A)(1) (emphasis added). "The primary purpose of the investigation or assessment shall be the protection of the child." *Id.* The investigation or assessment includes a determination of the nature, extent and cause of the neglect or abuse; an evaluation of the parents and the relationship of the parents to the child or children; a determination of the adequacy of the home environment; an evaluation of the "service needs of the child and the parents and ... any other children ... to reduce the potential for abuse and neglect"; and discovery of "[a]ll other pertinent data." 10 O.S.

---

2. DHS also argued that Plaintiffs' action is barred by the statute of limitations of 51 O.S. Supp.2000 § 156(B). Because we find that DHS

is entitled to immunity under § 155(4), it is not necessary to address DHS's statute of limitations argument.

Supp.2000 § 7106(B). The investigation or assessment *shall* also include "an interview with and examination of the subject child," and may include an interview with the parents. 10 O.S. Supp.2000 § 7106(C)(1). If DHS cannot obtain admittance to the children's home or school, then upon application by the district attorney "the district court *shall* order the parents ... to allow entrance for the interview, the examination, and the investigation or assessment." 10 O.S. Supp. 2000 § 7106(C)(2) (emphasis added).

¶ 7 Based on the record on appeal and the motions and briefs of the parties, and viewing the evidence in a light most favorable to Parents and their children, certain facts are undisputed. DHS received a referral from a school counselor regarding possible neglect of two of Parents' children. In response to this referral, and as required by § 7106(A)(1), DHS initiated an investigation of the referral. Pursuant to this investigation, Greg Hurst, one of DHS's case workers, contacted Mother, advised her that he had received a referral regarding her children, and attempted to arrange a time that he could meet with Parents and the children. Mother refused to meet with Hurst or to allow the children to meet with Hurst until such time as Mother could retain legal counsel. Mother also refused to allow Hurst to interview the children without a lawyer being present.

¶ 8 Because he was unsuccessful in his attempts to have Parents present themselves or the children for interviews, Hurst filed an affidavit with the Cotton County District Attorney's office asking it to "file a motion or petition to compel [Parents] to make the children and themselves available for interviews." The district attorney thereafter filed a motion requesting the Cotton County District Court to order Parents to make their children available for interview by DHS. The district court granted the motion, finding as follows:

1. That the Department of Human Services is charged with investigation of all complaints of abuse of children following notification of a complaint under the provisions of **Title 10 O.S. Section 7106;**

2. That Greg Hurst of the Department of Human Services has attempted to investigate the allegations of abuse, but to date been denied access to the minor children of the parties by the [Parents];

3. That Mr. Hurst needs to interview these children in order to determine whether or not the allegations are substantiated, as well as to determine who the alleged abuser(s) are, should the allegations be determined to be founded;

4. That under the provisions of **Title 10 O.S. Section 7106** (C)(2), the Office of the District Attorney may apply to the Court for an order directing the parents having control or custody of the children to make them available for an interview in connection with an on-going investigation.

¶ 9 Finding "good cause," the district court ordered Parents to appear with their children at "the Cotton County Courthouse, Department of Human Services, on *Wednesday, July 28, 1999, at 10:00 o'clock a.m.* for an interview with Greg Hurst, or his supervisor in connection with an on-going investigation being conducted by the Department of Human Services." Parents were served with the order on July 27, 1999, but, because they were unable to find counsel to attend the interview with them, they did not appear. On August 5, 1999, the children were taken into DHS custody and a petition alleging they were deprived was filed in the district court. On March 24, 2000, a non-jury trial was held on the petition alleging deprived status. The district court found in favor of Parents and the children were returned to them.

¶ 10 It is clear from the record that DHS was attempting to enforce the statute requiring it to investigate or assess the referral of neglect that it had received from the school counselor. 10 O.S. Supp.2000 § 7106(A)(1). In its effort to investigate the referral, DHS asked Parents for permission to interview their children, also pursuant to the statute which requires DHS to interview the children. 10 O.S. Supp.2000 § 7106(C)(1). It is also clear from the record that Parents refused to allow DHS access to the children for an interview. As a result, DHS followed the procedure outlined in the statute by request-

ing the district attorney's office to request an order from the district court requiring Parents to present the children for an interview. 10 O.S. Supp.2000 § 7106(C)(2). Again, however, Parents refused to comply with the order. This resulted in the children being placed in DHS custody, which further resulted in the district attorney filing a petition to adjudicate the children deprived. Viewing this evidence in a light most favorable to Parents and children, DHS was enforcing the law. There is no genuine issue of material fact, and DHS is thus immune from liability. 51 O.S. Supp.2000 § 155(4). The judgment granted to DHS is therefore affirmed.

¶ 11 AFFIRMED.

¶ 12 REIF, C.J., and STUBBLEFIELD, J., concur.